# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **EMERGENCY MEDICAL SERVICES AUTHORITY,** an Oklahoma public trust | ) ) ) ) | |
| **Plaintiff,** | ) ) | CIV-17-1168-M |
| vs. | ) ) ) | |
| 1. **RSUI INDEMNITY COMPANY,** a foreign, for profit insurance corporation, | ) ) ) ) ) | **JURY TRIAL DEMANDED** **ATTORNEYS' LIEN CLAIMED** |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Emergency Medical Services Authority ("EMSA"), by and through its attorneys of record, Riggs, Abney, Neal, Turpen, Orbison & Lewis, and for its Complaint against the Defendant, RSUI Indemnity Company ("RSUI"), alleges and states:

## PARTIES, JURISDICTION AND VENUE

1.  EMSA is an Oklahoma public trust established pursuant to 60 O.S. *§§* 176 *et seq.*, which is authorized to do business in Oklahoma, and which regularly conducts business operations and activities within this judicial district.

2.  RSUI is a foreign, for profit insurance corporation authorized to do business in the State of Oklahoma and was, during relevant times, transacting insurance business with insureds, including EMSA, in the State of Oklahoma.

3. This action arises from an actual and judiciable controversy between EMSA and RSUI. Pursuant to 28 USC §2201 and Rule 57 of the Federal Rules of Civil Procedure, EMSA requests this Court inquire into and declare the rights and obligations of the parties under a policy of insurance purchased by EMSA from RSUI. Pursuant to 28 U.S.C. § 2202, EMSA seeks further relief for RSUI's breach of the insurance contract and its breach of the inherent duty of good faith and fair dealing.

4. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332, because EMSA and RSUI are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Venue is proper pursuant to 28 U.S.C. § 1391 since the insurance policy at issue herein provides coverage for EMSA as an "Insured Organization" and its directors and officers as "Insured Persons" in this judicial district, a substantial number of the events giving rise to the claim occurred in this judicial district, and RSUI transacts insurance business statewide in Oklahoma, including this judicial district, and is subject to personal jurisdiction within this judicial district.

## BACKGROUND FACTS

5. The allegations contained in paragraphs 1 through 4 above are incorporated herein as if fully repeated.

6. EMSA purchased a "Directors and Officers Liability Policy" of insurance (Policy No. NHP665669) from RSUI for policy period December 14, 2015 to December 14, 2016 (the "2015 Policy"), a copy of which is attached as Exhibit 1. The Policy renewed for a 2016 Policy period of December 14, 2016 to December 14, 2017 (Policy No. NHP670359) (the "2016 Policy"), a copy of which is attached as Exhibit 2.

7.  The 2015 Policy (Exhibit 1) contained, *inter alia*, the following:

\*   \*   \*

In consideration of the payment of premium and in reliance upon all statements made to the Insurer in the Application, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the Insurer agrees:

**SECTION I. – INSURING AGREEMENTS.**
**B**.  With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C**.  With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

\*   \*   \*

Endorsement – AMENDED SETTLEMENT CLAUSE – 70/30

SECTION V. – CONDITIONS, A. Duty to Defend is deleted and replaced by the following:
**A**.  **Duty to Defend**
It shall be the right and the duty of the **Insurer** to defend any **Claim** against the **Insured** for which coverage applies under this policy, and the **Insurer** shall have the right to appoint counsel of its choosing. . .

\*   \*   \*

Endorsement – OKLAHOMA CHANGES – PUNITIVE DAMAGES

The last paragraph of SECTION III – DEFINITIONS, K. **Loss** is amended to read as follows:

The DEFINITION OF **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damages award, if and where insurable. In the

state of Oklahoma, coverage for punitive or exemplary damages shall solely apply to vicarious liability. . .

\*     \*     \*

Endorsement – SEVERABILITY OF ALL EXCLUSIONS

. . . The **Wrongful Act** of an **Insured** shall not be imputed to any other Insured for the purpose of determining the applicability of the EXCLUSIONS in SECTION IV.

\*     \*     \*

**SECTION III. – DEFINITIONS**

**B**.   **Claim**, either in the singular or the plural, means:
  1. A written demand for monetary or non-monetary relief;
  2. A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
     a. Receipt of service of a complaint or similar pleading;
     b. Return of an indictment (in the case of a criminal proceeding); or
     c. Receipt of a notice of charges;
  3. An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a notice of a complaint or similar document of which notice has been given to the **Insured**.

**C.**   **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:
  1. Remuneration, overhead or benefit expenses associated with any **Insured Person**; or
  2. Any obligation to apply for or furnish any appellate or similar bond. . .

**O**.   **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty, or any **Employment Practices Wrongful Act** or **Personal Injury Wrongful Act**, by:
  1. An **Insured Person** while acting in his or her capacity as such and on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or
  2. The **Insured Organization** . . .

4

**SECTION V. – CONDITIONS**

**C**.   **Notice of Claim or Circumstances**
   1.   If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the Insurer as soon as practicable after such Claim is first made, but in no event shall such notice be given later than sixty (60) days after either the expiration date or any earlier cancellation date of this policy.
   2.   If, during the **Policy Period** or Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any Insured and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**.  The written notice shall include, at a minimum:
      a.   The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and
      b.   The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**. . .

8.   The 2016 Policy contained, *inter alia*, the following provisions, not contained in the 2015 Policy:

\*   \*   \*

Endorsement – REGULATORY COVERAGE

1.   The **Insurer** will pay on behalf of the **Insured** any **Loss** from a **Regulatory Claim** first made against them during the **Policy Period** and reported in a accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, which shall be applicable to **Regulatory Claims** as it is for **Claims** generally.  The **Insurer's** maximum aggregate Limit of Liability for **Loss** under this policy in connection with **Regulatory Claims** made against all **Insureds** shall be $250,000.  This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page. . .
2.   **Regulatory Claim** shall mean:

5

       (a)    a written demand for monetary damages or non-monetary relief;
       (b)    a search warrant, subpoena, notice of investigation, or contact letter;
       (c)    a civil proceeding commenced by the service of a complaint or similar pleading;
       (d)    a criminal proceeding commenced by the return of any indictment or information;
       (e)    a civil administrative or civil regulatory proceeding commenced by the filing of a demand or notice of charges; or
       (f)    a qui tam action or a relator lawsuit commenced by the service of a complaint or similar pleading,

brought by or on behalf of federal, state or local governmental, regulatory or administrative agency or entity against an **Insured** for a **Regulatory Wrongful Act**, including any appeal therefrom.

**Regulatory Claim** shall not include any customary or routine audit or reconciliation involving an **Insured** by any federal, state or local governmental, regulatory or administrative agency or entity.

A **Regulatory Claim** will be deemed to have first been made when, with respect to any civil, criminal, or civil administrative or civil regulatory proceeding or qui tam action or relator lawsuit described in (c)-(f) above, such **Regulatory Claim** is commenced as set forth in this definition or, in the case of any written demand, search warrant subpoena, notice of investigation, or contact letter described in (a) or (b) above, when such demand is first received by an **Insured**.

3.   **Regulatory Wrongful Act** shall mean any actual or alleged violation by an **Insured** of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law anywhere in the world, any federal, state, or local anti-kickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that a **Regulatory Wrongful Act** shall not include any actual or alleged **Retaliation**. . . .

4.   Solely with respect to coverage afforded by this endorsement, the term **Loss**, as defined in Section III. – DEFINITIONS of this policy, is amended to include the amount that any **Insured** shall become legally obligated to pay on account of any covered **Regulatory Claim**, including but not limited to:
       (a)    damages;
       (b)    judgments;
       (c)    settlements;
       (d)    pre-judgment and post-judgment interest; and

    (e)  fines and penalties levied against an **Insured** for violation of the Federal False Claims Act or any similar federal, state, or local statutory law anywhere in the world, any federal, state, or local anti-kickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law. . . .

6. Solely with respect to a **Regulatory Claim**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to, in whole or in part, any litigation, injunctive or administrative proceeding, government audit or investigation against or involving any **Insured** that was commenced or initiated prior to, or pending as of December 14, 2016, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation, injunctive or administrative proceeding, government audit or investigation.

7. If any **Regulatory Claim** is filed under seal, the **Insured** shall, as a condition precedent to exercising any right to coverage under this policy, immediately upon becoming aware of such **Regulatory Claim** petition the applicable court, agency, or entity to allow such sealed information to be provided to the **Insurer**.

## 2015 POLICY FACTUAL BACKGROUND

9. On July 31, 2015, the United States Attorney for the Eastern District of Texas issued a Civil Investigative Demand ("CID") to EMSA. The CID stated, in part:

> This Civil Investigative Demand is issued pursuant to the False Claims Act, 31 U.S.C §§ 3729-3733, in the course of a False Claims Law investigation, to determine whether there is or has been a violation of 31 U.S.C. § 3729."

9. EMSA received the CID on August 5, 2015.

10. The CID did not constitute a Claim under the 2015 Policy. The CID was not a written demand for monetary or non-monetary relief; a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by receipt of service of a complaint or similar pleading, return of an indictment (in the case of a criminal proceeding), or receipt of a notice of charges; or an administrative

7

or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a notice of a complaint or similar document of which notice has been given to the Insured.

11. The CID was not a Regulatory Claim, as defined in the 2016 Policy. Since the CID did not give notice of any Regulatory Wrongful Act nor did it give notice of any actual or alleged violation by an Insured of the responsibilities, obligations or duties imposed by the Federal False Claims Act or any similar federal, state, or local statutory law or common law.  Moreover, the CID did not constitute a "Regulatory Claim" under the 2016 Policy because it did not identify that it was "against an Insured for a Regulatory Wrongful Act..."

12. The CID was issued to EMSA but it did not identify EMSA as a target of any investigation and it only stated that the U.S. Attorney was gathering information in order to determine whether any violations of the False Claims Act had occurred. Others identified in the CID included Paramedics Plus and AMR, both of whom were Texas entities conducting business activities in the State of Texas.

13. In August, 2015, attorneys from the Office of the United States Attorney for the Eastern District of Texas (the "U.S. Attorney") advised EMSA that the investigation concerned something in Texas.  EMSA did not engage in any activities in Texas.  This conversation confirmed that there was no Claim against an Insured for a Regulatory Wrongful Act..."

14. Since EMSA was specifically advised that the U.S. Attorney was investigating something in Texas, a location in which EMSA did not conduct any activity, the CID did not constitute notice to EMSA of any facts or circumstances which would reasonably be expected to give rise to a Claim against any Insured.

**Events Occurring During the 2015 Policy Period**
**(December 14, 2015 to December 14, 2016)**

15    The 2015 Policy period began on December 14, 2015 and continued to December 14, 2016.

16.    Between August, 2015, and February, 2016, EMSA cooperated with the U.S. Attorney's requests for information.

17.    On February 3, 2016, EMSA's counsel met with the U.S. Attorney in Plano, Texas. The U.S. Attorney requested additional information. The U.S. Attorney did not provide any written claim, but they did orally state, for the first time, that EMSA was a target of the investigation. Thus, it was at this time that EMSA first received notice of facts or circumstances that might reasonably be expected to give rise to a Claim against any Insured.

18.    U.S. Attorney, on July 6, 2016, Stephen Williamson ("Williamson"), EMSA's Executive Director, received a CID directed to him.

19.    On August, 16, 2016, EMSA's counsel met with the U.S. Attorney, at which time the U.S. Attorney made an oral settlement demand to EMSA and advised that Williamson would likely be named as a Defendant in any suit.

20. On October 13, 2016, EMSA's counsel sent a letter to EMSA's insurance agent/broker, giving notice of facts and circumstances thatarguably gave rise to a Claim. Thus, EMSA promptly gave RSUI notice that it had become aware of facts and circumstances that might reasonably be expected to give rise to a Claim, within the Policy period and within the Claims Notice Period for the policy in effect from December 14, 2015 to December 14, 2016.

21. EMSA's counsel communicated with RSUI over the following weeks. On December 5, 2016, RSUI advised by letter from Scott Fahy that the CID and oral demand did not assert "Wrongful Acts which could trigger coverage under the Policy nor does it make a demand for relief as of yet." The letter also accepted notification of "facts and circumstance" which did operate to trigger coverage under the 2015 Policy.

**Events Occurring During the 2016 Policy Period**
**(December 14, 2016 to December 14, 2017)**

22. On December 14, 2016, the insurance coverage renewed for the policy period from December 14, 2016 to December 16, 2017 (the "2016 Policy").

23. On January 18, 2017, EMSA was notified of the unsealing of certain pleadings in that *qui tam* action styled *United States of America, ex rel. Stephen Dean v. Paramedics Plus, LLC, East Texas Medical Center Regional Healthcare System, Inc., East Texas Medical Center Regional Health Services, Inc., Emergency Medical Services Authority, and Herbert Stephen Williamson*, Civil Action No. 4:14-CV-203, in the United States District Court for the Eastern District of Texas (the "Eastern District of Texas Lawsuit".

24. On January 18, 2017, EMSA sent copies of relevant documents from the Eastern District of Texas Lawsuit to RSUI and again requested coverage under the 2015 Policy and/or the 2016 Policy.

25. On January 20, 2017, RSUI acknowledged by email that the unsealing of the Eastern District of Texas Lawsuit triggered coverage and "not the investigation." The email further advised EMSA that coverage for Williamson had not been triggered.

26. On January 23, 2017, the U.S. Attorney amended the Complaint filed in the Eastern District of District of Texas Lawsuit to add Williamson as a Defendant.

27. By letter dated March 7, 2017, RSUI contended that it is not required to provide defense or indemnification to EMSA pursuant to either the 2015 Policy or the 2016 Policy ("Denial Letter").

28. In the Denial Letter, RSUI reversed its prior positions concerning the CID, as communicated on December 5, 2016.

29. In the Denial letter, RSUI concedes that no written demand for monetary or nonmonetary relief was made against EMSA or Williamson during the 2015-2016 policy period but goes on to contend, for the first time, that receipt of the CID on August 5, 2015, constituted notice to EMSA that the Department of Justice ("DOJ") was investigating possible violations by EMSA of the False Claims Act. RSUI also contended for the first time that receipt of the CID gave EMSA notice of facts and circumstances "which may reasonably be expected to give rise to a Claim against any Insured" prior to the inception of the 2015-2016 Policy, RSUI asserted that EMSA was not entitled to a defense or coverage under the Policy.

30. In reversing its previous position, RSUI unreasonably ignored the fact that the U.S. Attorney had expressly communicated to EMSA that the purpose of the CID was to investigate "things in Texas," a state in which EMSA had no operations and conducted no business activities, whatsoever. RSUI also unreasonably ignored the fact that it was not until February 3, 2016, that the U.S. Attorney, for the first time, orally stated that "EMSA is a target of investigation."

31. In the Denial Letter, RSUI claims to recognize that "the allegations asserted in the Lawsuit are presently without substantiation, and by this letter RSUI does not intend to suggest that those allegations have any factual or legal merit;" however, the positions RSUI stated suggests that it has determined that the claims against EMSA have merit, totally ignoring its obligation to defend EMSA for such claims.

32. After EMSA continued to communicate with RSUI, in an effort to resolve the coverage issues, RSUI took the position in a letter dated September 29, 2017, that "the CID qualifies as a Regulatory Claim that was first made on August 5, 2015, when EMSA received the CID, which was prior to the 2016 Policy Period, such that there is not coverage under the 2016 Policy."

33. RSUI ignores the fact that as of August 5, 2015, there was no policy which contained provisions regarding Regulatory Claims, and also ignores the language of the 2016 Policy. RSUI asserts that its position is based upon subsection (b) "a search warrant, subpoena, notice of investigation, or contact letter," but disregards the language which modifies all of the listed types of claims: "brought by or on behalf of a federal, state or local governmental, regulatory or administrative agency or entity against an Insured for a

Regulatory Wrongful Act." The "search warrant, subpoena, notice of investigation, or contact letter" can only be a "Regulatory Claim" if it is "brought by or on behalf of a federal, state or local governmental, regulatory or administrative agency or entity against an Insured for a Regulatory Wrongful Act." The CID failed to meet this definition because it did not identify that it was brought against an Insured for any specified Regulatory Wrongful Act.

34. To date, EMSA has expended an amount in excess of $1,000,000.00, the liability limit available in the 2015 Policy and/or 2016 Policy, in defending itself and Stephen Williamson in the Eastern District of Texas Lawsuit.

## EMSA'S CLAIMS FOR RELIEF AGAINST RSUI

### First Claim for Relief - Declaratory Judgment

35. The allegations contained in paragraphs 1 through 34 above are incorporated herein as if fully repeated.

36. EMSA seeks a declaration from the Court that the Policy obligates RSUI to provide EMSA a defense for the claims asserted against it in the Eastern District of Texas Lawsuit.

37. EMSA further seeks a declaration from the Court that the Policy obligates RSUI to indemnify EMSA for any judgment entered against it in the Eastern District of Texas Lawsuit that the Court determines to be a covered loss under the Policy.

38. EMSA further prays that the Court will enter an Order granting any and all other relief it deems just, equitable and proper, including such orders as may be appropriate to enforce the Court's declarations.

### Second Claim for Relief - Breach of Insurance Contract

39. The allegations contained in paragraphs 1 through 38 above are incorporated herein as if fully repeated.

40. By denying EMSA's claim, RSUI has breached the terms of the 2015 Policy and/or the 2016 Policy.

41. As a result of RSUI's tortious breach of the Policy, EMSA has been damaged in an amount in excess of $75,000.00 in actual damages for having to, at its expense, retain counsel to defend the claims asserted in the Eastern District of Texas Lawsuit.

### Third Claim for Relief - Breach of the Inherent Duty of Good Faith and Fair Dealing in the Insurance Contract

42. The allegations contained in paragraphs 1 through 41 above are incorporated herein as if fully repeated.

43. RSUI's unreasonable denial of EMSA's claim for a defense of the claims asserted in the Complaint filed in the Eastern District of Texas Lawsuit, the contrary and/or inconsistent positions it has taken to find reasons to deny rather than provide a defense and coverage to EMSA constitutes a breach of RSUI's duty to act in good faith and to deal fairly with EMSA as its insured and a tortious breach of the Policy.

44. As a result of RSUI's breach of its duty to deal fairly and in good, EMSA is entitled to recover an amount in excess of $75,000.00 for all the financial harm it has sustained or will sustain from RSUI's denial of coverage under the Policy it purchased from RSUI.

45. RSUI's unreasonable denial of EMSA's claim and the actions it took to avoid providing a defense and coverage were intentional, malicious, reckless and grossly negligent and were in disregard of the rights of EMSA justifying an award of punitive damages to EMSA and against RSUI in an amount in excess of $75,000.00.

WHEREFORE, Emergency Medical Services Authority prays judgment against RSUI Indemnity Company for compensatory damages in an amount in excess of $75,000.00 and for punitive damages in an amount in excess of $75,000.00, together with interest as provided by law, costs, including attorney fees, and all such other relief as the court may deem equitable and proper.

Respectfully submitted,

/s/ Wm. Gregory James
Thomas M. Askew, OBA #13568
Wm. Gregory James, OBA # 4620
Sharon K. Weaver, OBA #19010
Stephanie L. Theban, OBA #10362
RIGGS, ABNEY, NEAL, TURPEN,
 ORBISON & LEWIS
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
*Attorneys for Plaintiff, Emergency Medical Services Authority*